UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TED SOUZA, et al.,

    Plaintiffs,

    v.

CALIFORNIA DEPARTMENT OF TRANSPORTATION, et al.,

    Defendants.

No. C 13-4407 PJH

**ORDER GRANTING MOTION TO DISMISS**

    The motion of defendants California Department of Transportation and Malcolm Dougherty (collectively, "CalTrans") for an order dismissing the second and seventh causes of action came on for hearing before this court on January 29, 2014. Plaintiffs appeared by their counsel Stuart Gross, and CalTrans appeared by its counsel Derek Van Hoften. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion as follows.

**BACKGROUND**

    This is a case brought under the Administrative Procedures Act, 5 U.S.C. § 701, et seq. ("APA"), challenging a proposal by CalTrans to widen and/or otherwise modify portions of U.S. Route 199 ("U.S. 199") and State Road 197, in an area bordering the Smith River and generally within the Smith River National Recreation Area.

    Defendants are CalTrans; Malcolm Dougherty, the Director of CalTrans (in his official capacity); the National Marine Fisheries Service ("NMFS") – a division of the National Oceanic and Atmospheric Administration ("NOAA") and the United States Department of Commerce; and Samuel D. Rauch III, Acting Assistant Administrator for

Fisheries for NOAA (in his official capacity).

The Smith River, which is located in Del Norte County, is the last remaining undammed river in California. Approximately 300 miles of the river are designated "wild and scenic" under the Wild and Scenic Rivers Act, 16 U.S.C. § 1271, et seq. The Smith River has also been designated "critical habitat" under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq., for the Southern Oregon Northern California Coast Evolutionary Significant Unit of coho salmon ("SONCC coho"), listed as a threatened species under the ESA; and designated essential fish habitat ("EFH") for both coho and Chinook salmon under the MSA.

Plaintiffs allege that CalTrans seeks to create a network of roads through coastal Northwestern California, along which large trucks would be given unrestricted access along rural roads from Oregon to the San Francisco Bay. Specifically, for purposes of the present action, what CalTrans has designated the "197/199 Safe STAA Access Project" ("197/199 Project" or "Project") calls for major roadwork at seven locations along U.S. 199 and SR 197. The five U.S. 199 locations are within the narrow and windy Smith River Canyon, right above the Smith River. The two SR 197 locations are on the Smith River's bank, as the river leaves the mountains and expands into its estuary, which is the spawning ground of the Smith River's population of SONCC coho.

The regulatory process employed by CalTrans and NMFS to assess the proposed Project and its potential impacts on the Smith River's salmon populations and their habitat is the consultation process established under the ESA and the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1801, et seq. ("MSA").

Section 7 of the ESA, 16 U.S.C. § 1536, and § 305 of the MSA, 16 U.S.C. § 1855, establish a process through which an agency planning to engage in an action (referred to as the "action agency") that could impact, in the case of the ESA, listed species and their designated critical habitat, or, in the case of the MSA, designated EFH, is required to consult with NMFS (referred to as the "consulting agency") concerning such impacts.

In the case of the MSA, § 305(b)(2) and its enabling regulations require action

agencies to consult with the NMFS "with respect to any action authorized, funded, or undertaken, or proposed to be authorized, funded, or undertaken, by such agency that may adversely affect any essential fish habitat." 5 U.S.C. § 1855(b)(2); 50 C.F.R. § 600.920.

This consultation is initiated by preparation by the action agency of an EFH assessment which must contain "(i) A description of the action. (ii) An analysis of the potential adverse effects of the action on EFH and the managed species. (iii) The Federal agency's conclusions regarding the effects of the action on EFH. (iv) Proposed mitigation, if applicable." 50 C.F.R. § 600.920(e)(3).  An action agency can limit its EFH assessment to these minimum requirements and thus engage in what are known as the "abbreviated consultation procedures" with NMFS, but only if its action does not have the potential to cause a substantial adverse effect on EFH. 50 C.F.R. § 600.920(h).

However, if the action does have the potential to cause a substantial adverse effect on EFH, the action agency must engage in what is known as "expanded consultation procedures" with NMFS, which are intended to "allow[] maximum opportunity for NMFS and the [action] agency to work together to review the action's impacts on EFH and to develop EFH Conservation Recommendations." 50 C.F.R. § 600.920(i).  These procedures involve (i) an on-site inspection to evaluate the habitat and the site-specific effects of the project; (ii) the views of recognized experts on the habitat or species that may be affected; (iii) a review of pertinent literature and related information; (iv) an analysis of alternatives to the action, including alternatives that could avoid or minimize adverse effects on EFH; and (v) analysis of other relevant information.  See 50 C.F.R.  § 600.920(e)(4).

If the action agency believes that its action would not result in substantial adverse impacts to EFH it may submit an EFH assessment meeting the minimal requirements discussed above.  50 C.F.R. § 600.920(h)(2).  However, if NMFS determines that, in fact, "the action may result in substantial adverse effects on EFH, or that additional analysis is needed to assess the effects of the action," NMFS must request that the action agency engage in expanded consultation. 50 C.F.R. § 600.920(h)(3).

CalTrans and the Federal Highway Administration ("FHWA") executed a Memorandum of Understanding ("CalTrans/FHWA MOU"), under which the FHWA assigned to CalTrans, and CalTrans accepted, the delegation of authority pursuant to 23 U.S.C. § 327, to provide environmental review, consultation, or other such action pertaining to the review or approval of the Project, as required by federal laws including the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, et seq.; § 7 of the ESA, 16 U.S.C. § 1536; § 4(f) of the Department of Transportation Act of 1966, 23 U.S.C. § 138 and 49 U.S.C. § 303; § 7 of the Wild and Scenic Rivers Act, 16 U.S.C. § 1278; and the implementing regulations of those statutes.

Plaintiffs assert that it was pursuant to the CalTrans/FHWA MOU that CalTrans prepared and adopted an environmental assessment ("EA"[1]), based on which it adopted a "finding of no significant impact" (or "FONSI") (collectively with the EA prepared regarding the 197/199 Project, referred to as "the EA/FONSI"), as well as the Revised Biological Assessment for Impacts to Coho Salmon, Designated Critical Habitat, and Essential Fish Habitat Assessment ("EFHA") for the 197/199 Project (the "Revised Coho BA/EFHA") under the ESA and the MSA.

Plaintiffs contend that CalTrans issued the Revised Coho BA/EFHA on March 29, 2012; that CalTrans approved the 197/199 Project and adopted a final EA/FONSI on April 10, 2013; that on April 24, 2013, the FHWA, on behalf of CalTrans, issued a Notice of Final Federal Agency Actions in the Federal Register, giving notice of its decisions; and that CalTrans issued a Project Report on June 6, 2013, purporting to be a Project Approval.

Plaintiffs assert that when CalTrans approved the Project on April 10, 2013, it did not first complete an environmental impact statement ("EIS") as required by NEPA, but rather only the EA/FONSI, which plaintiffs claim was inadequate. Plaintiffs also allege that

---

[1] An EA is a "concise public document" that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an environmental impact statement [EIS] or a finding of no significant impact [FONSI]." 40 C.F.R. § 1508.9. It must include a "brief discussion" of "the environmental impacts of the proposed action and alternatives." 40 C.F.R. § 1508.9(b).

4

CalTrans' analysis of the Project's anticipated impact on the Smith River's SONCC coho, their critical habitat, and the EFH of coho and Chinook salmon ("Pacific Salmon EFH"), memorialized in the Revised Coho BA/EFHA was inadequate, in part because of CalTrans' failure to look at the anticipated impact of the Project as a whole, instead of on a location-by-location basis.

Plaintiffs contend that the "final actions" referred to in the FHWA's April 24, 2013 Notice of Final Agency Actions included, as to CalTrans, the issuance of the EA/FONSI, and the approval and authorization of the proposed Project based thereon, and as to NMFS, the issuance of the "letter of concurrence" concerning the Project's effects on listed SONCC coho, green sturgeon, and designated SONCC critical habitat, on May 7, 2012.

Plaintiffs filed the complaint in the present action on September 23, 2013, asserting seven causes of action, all under the APA – (1) failure to adequately engage in ESA consultation (against NMFS); (2) failure to adequately engage in consultation under § 305 of the MSA (against all defendants); (3) failure to adequately engage in Wild and Scenic Rivers Act consultation (against CalTrans); (4) failure to prepare an EIS as required by NEPA (against CalTrans); (5) failure to prepare an adequate EA as required by NEPA (against CalTrans); (6) failure to comply with the Department of Transportation Act as required by NEPA (against CalTrans); and (7) failure to comply with NEPA, the ESA, the MSA, the Wild and Scenic Rivers Act, and the Department of Transportation Act (against all defendants).

CalTrans now seeks an order dismissing two claims asserted against it – the second cause of action, for lack of subject matter jurisdiction, and the seventh cause of action, for failure to state a claim.

**DISCUSSION**

A.   Legal Standards

    1.   Lack of subject matter jurisdiction

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress

pursuant thereto. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject-matter jurisdiction. See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992). The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Id.; see also Spencer Enters., Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003); Attorneys Trust v. Videotape Computers Prods., Inc., 93 F.3d 593, 594-95 (9th Cir. 1996). The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).

2. Review under § 704 of the APA

Section 704 of the APA provides for judicial review of an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. For an agency action to be "final," two conditions must be satisfied: "First, the action must mark the consummation of the agency's decisionmaking process . . . And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1997). "The finality requirement is to be applied in a 'flexible' and 'pragmatic' way, and courts are 'guided by a presumption of reviewability.'" Okinawa Dugong v. Gates, 543 F. Supp. 2d 1082, 1092 (N.D. Cal. 2008) (quoting Abbott Labs v. Gardner, 387 U.S. 136, 149-52 (1967)).

The finality requirement of Section 704 is "jurisdictional" in quality. Oregon Nat. Desert Ass'n v. United States Forest Serv., 465 F.3d 977, 982 (9th Cir. 2006). However, once such jurisdiction has been established, the scope of the court's review is not limited to the final decision that satisfied the jurisdictional prerequisite. Rather, "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on review of the final agency action." 5 U.S.C. § 704.

This authority is a critical component of the structure for judicial review of agency actions established by Congress through the APA. Requiring that there be a final agency

6

action before review may be taken, but allowing thereafter review of the other agency actions that led to that final action achieves a balance, on the one hand, between "the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute,'" see Abbott Labs., 387 U.S. at 140 (quoting 5 U.S.C. § 702), and, on the other hand, the goal of "avoid[ing] the disruption, delay, and piecemeal review that accompany interference with pending administrative proceedings," see Public Utility Com'r of Oregon v. Bonneville Power Admin., 767 F.2d 622, 629 (9th Cir. 1985) (citations omitted).

B.     CalTrans' Motion

CalTrans seeks an order dismissing the second cause of action, which alleges failure to engage in consultation under § 305 of the MSA, and the seventh cause of action to the extent it duplicates that claim.[2]  Although CalTrans argues both that the court lacks subject matter jurisdiction, and that the complaint fails to state a claim, the bulk of its argument is directed towards subject matter jurisdiction.

In the second cause of action, plaintiffs assert that in conducting its consultation with NMFS under the MSA and the implementing regulations, CalTrans acted in a manner that was arbitrary, capricious, an abuse of discretion, and/or was otherwise not in compliance with the law; and that it failed to properly analyze the Project's adverse effects.

CalTrans argues that the second cause of action should be dismissed for lack of subject matter jurisdiction because it is based on the submission of an allegedly inadequate EFH assessment to the NMFS, which does not qualify as either an "agency action" or a "final agency action" under the APA.[3]

---

[2]  In their opposition to the present motion, plaintiffs describe the seventh cause of action as it applies to CalTrans as based on the claims asserted in the second through sixth causes of action under the MSA, the Wild and Scenic Rivers Act, NEPA, and the Department of Transportation Act.

[3]  CalTrans also asserts that the acts it is alleged to have taken do not fall under the narrow scope of actions under the MSA that are subject to judicial review.  However, given the finding that the challenged action by CalTrans does not constitute "final agency action," the court finds it unnecessary to address CalTrans' second argument.

7

The APA defines "agency action" as including "the whole or part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13); Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 62 (2004); see also Rattlesnake Coalition v. U.S. E.P.A., 509 F.3d 1095, 1103 (9th Cir. 2007). In Norton, the Supreme Court emphasized that all the categories listed in the definition "involve circumscribed, discrete, agency actions." Norton, 542 U.S. at 62.

Here, the challenged action is the submission of an EFH assessment to NMFS as part of the consultation process under the MSA. See Cplt ¶¶ 177-178. CalTrans argues that the submission of an EFH assessment is not a rule, order, license, sanction, relief, or the equivalent or denial thereof, and does not fit within the nature of those activities as described by the Supreme Court, as it does not implement or prescribe any law or policy, does not constitute a final disposition, and does not grant permission or any other form of license or authority.

CalTrans notes that even the allegations in the complaint assert that following submission of the assessment, NMFS evaluated it and exercised discretion in determining whether the action might result in substantial adverse effects on essential fish habitat, whether additional analysis was required, and whether to require expanded consultation.

CalTrans argues further that the submission of an EFH assessment is not a "final agency action" as that term has been defined by the courts. In Bennett v. Spear, the Supreme Court identified two conditions that must be satisfied for an agency action to be "final" – the action must mark the "consummation" of the agency's decisionmaking process, and not be simply tentative or interlocutory in nature; and the action must be one by which "rights or obligations have been determined" or from which "legal consequences will flow." Id., 520 U.S. at 177-78 (final biological opinion issued by Fish & Wildlife Service under ESA was a final agency action reviewable under the APA).

Here, CalTrans asserts, neither condition is satisfied. With regard to the first prong, CalTrans argues that the mere submission of a EFH assessment to NMFS as an early part of the consultation process is a preliminary step, and does not mark the consummation of

the agency's decisionmaking process with respect to the ultimate action it will take on the project. Instead, CalTrans argues, the consultation process requires ongoing coordination with NMFS, as reflected in the MSA's enabling regulations, 50 C.F.R. § 600.920, et seq., which contemplate further agency consideration and possible modification of analysis and determinations, and reflect that further revision may be required.

With regard to the second prong, CalTrans contends that its actions in submitting the EFH assessment did not "impose an obligation, deny a right, or fix some legal "relationship." See Fairbanks North Star Borough v. U.S. Army Corps of Engineers, 543 F.3d 586, 591 (9th Cir. 2008). Thus, because the assessment did not determine plaintiffs' rights or obligations, and because plaintiffs' rights remained unchanged by CalTrans' submission of the EFH assessment, there is no final agency action that can trigger judicial review under the APA.

Finally, CalTrans asserts that because the seventh cause of action alleges a claim under the APA for violation of the MSA, based on the same allegations that support the second cause of action, the seventh cause of action (or at least the MSA-related portion) must be dismissed for the reasons as stated above with regard to the second cause of action.

In opposition, plaintiffs do not address CalTrans' argument that the submission of the EFH assessment was not an "agency action" under the definition in the APA. They do contend that the issuance of the EA/FONSI and its approval and authorization of the proposed Project – which is what they are challenging here – was a "final agency action." They argue that because the EFH assessment was preliminary to, but was part of, that final action, the court has jurisdiction to evaluate it just as it has jurisdiction to evaluate the actual final agency action.

Similarly, plaintiffs argue, CalTrans' EFH assessment was also a "preliminary, procedural and/or intermediate action" in NMFS' May 7, 2012 letter of concurrence, because it was a "preliminary step" in the EFH consultation process which led to the issuance of the letter of concurrence. Thus, plaintiffs assert, it can be considered as part of

the review of the "final agency action."

Plaintiffs assert that the consultation required by MSA § 305 is initiated by the preparation by the action agency (here, CalTrans) of an EFH assessment, which may or may not require further "expanded consultation procedures." They contend that CalTrans failed to meet it obligations under the MSA consultation process, thereby acting in a manner that was arbitrary, capricious, an abuse of discretion, and/or otherwise not in compliance with the law (including the MSA).

Specifically, plaintiffs claim, first, that CalTrans improperly combined its ESA biological assessment with its MSA EFH assessment, with the result that neither standard was satisfied; second, that CalTrans improperly segmented the analysis into distinct sections, looking at the adverse effects of the work called for in each of the seven Project locations, in only the immediate vicinity of each location, rather than fulfilling its obligations under the MSA to analyze the potential adverse effects of the Project in each of these locations and on the Smith River as a whole, including the estuary (where no actual roadwork is planned); and third, that CalTrans' analysis failed to use the best scientific data available concerning the effects of road building and/or road runoff on Salmon EFH or measures that can be taken to minimize or offset such effects.

In addition, plaintiffs contend that CalTrans relied heavily on the Revised BA/EFH Assessment as the vehicle by which it assessed the proposed Project's potential impact on the Smith River and its salmon populations, incorporating it by reference in the EA. As a result, plaintiffs contend, CalTrans' failures in this regard afflicted its decision to issue the EA/FONSI and approve and authorize the proposed Project.

The court finds that CalTrans' motion must be GRANTED. The submission of the EFH assessment to NMFS was not an "agency action" under the definition of that term in the APA because it was not a "rule, order, license, sanction, relief or the equivalent or denial thereof" – or "designed to implement, interpret, or proscribe law of policy . . . a final disposition . . . a permit or other form of permission . . . [or] a prohibition or taking of other compulsory or restrictive action." 5 U.S.C. § 551; see Norton, 542 U.S. at 62. Thus, it is

not subject to judicial review on that basis.

Nor was it a "final agency action." The action plaintiffs are challenging as the "final agency action" appears to be the action reflected in the April 24, 3013 "Notice of Final Agency Action" which was published in the Federal Register by the FHWA (part of the Department of Transportation). However, even if the submission of the EFH assessment by CalTrans could be construed as a preliminary agency action reviewable as part of a final agency action, the APA contemplates that the preliminary and final actions be taken by the same agency within the same statutory scheme. 5 U.S.C. § 704.

Here, plaintiffs challenge CalTrans' submission of the EFH assessment, and claim that it is reviewable as a preliminary agency action bsed on NMFS taking a final agency action or CalTrans taking a final agency action under NEPA. The court finds no authority for such a proposition.

## CONCLUSION

In accordance with the foregoing, the court finds that the claims asserted against CalTrans in the second cause of action, and in the seventh cause of action to the extent it is based on the MSA, must be DISMISSED for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: February 26, 2014

PHYLLIS J. HAMILTON
United States District Judge