UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TED SOUZA, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION, et al.,<br><br>    Defendants. | Case No. 13-cv-04407-JD<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 48 |

**INTRODUCTION**

This case arises out of a project proposed by defendant California Department of Transportation ("Caltrans") to modify U.S. Route 199 and State Route 197 at seven sites in Del Norte County, California, near the Smith River. Caltrans consulted with Defendant National Marine Fisheries Service ("NMFS") about the potential environmental impacts of the project. Plaintiffs have challenged the adequacy of Defendants' environmental review documents and consultation process. They ask this Court to issue a preliminary injunction freezing the project pending an expedited review of their claims on the merits. The Court finds that plaintiffs are entitled to an injunction to preserve the status quo while the parties litigate the merits on a fast-track schedule.

**BACKGROUND**

**I.  The Project and Setting**

The project at issue is Caltrans' 197/199 Safe STAA Access Project (the "Project"). Caltrans seeks to widen and realign sections of Routes 197 and 199 to accommodate trucks under the federal Surface Transportation Assistance Act ("STAA"). STAA trucks are oversize vehicles,

and Caltrans has concluded that the Project is necessary to allow safer use of these trucks along Routes 197 and 199.

The Project contemplates construction and road work at seven sites. They are denominated Ruby 1; Ruby 2; Patrick Creek Narrows Locations 1, 2, and 3; the Narrows; and Washington Curve. The Project will be funded and constructed in four stages, beginning with the Patrick Creek Narrows ("PCN") locations. The contract for the PCN locations was advertised on August 12, 2013, awarded on December 10, 2013, and approved on January 3, 2014. Initial work on the PCN locations began in early January 2014 with vegetation removal. Caltrans advised the Court at oral argument and in a follow-up letter that construction work in earnest will not begin at Patrick Creek Narrows Location 2 ("PCN-2") prior to May 8, 2014, but could start at any time after that date.

The PCN-2 site is where the construction work will occur closest to the Smith River. This site has a bridge that Caltrans plans to tear down and replace with a new structure. The roadways connecting to the bridge will be widened and other related work will be done. Caltrans estimates that the PCN-2 work will disturb an area of 3 acres, excavate 20,000 cubic yards of soil, remove 84 trees, and add 0.25 acres of additional impervious surface such as roadway and concrete. (Pollak Decl., Ex. B (Revised Biological Assessment ("Rev. BA")) at 55.) The work will involve blasting and night shifts, and is expected to take 300 working days spread over three years of construction seasons. (*Id*. at 20, 21.)

The Smith River is designated under state and federal law as Wild and Scenic, and Caltrans acknowledges that it is considered one of the "crown jewels" of the National Wild and Scenic River System. (Rev. BA at 4.) It is the last remaining undammed major river in California. Dkt. No. 33 at 2. The Smith River also hosts a population of a federally-listed threatened fish species, the Southern Oregon Northern California Coast Evolutionary Significant Unit of the threatened coho salmon ("SONCC coho"). The Smith River has been designated "critical habitat" under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1533 *et seq.*, for the SONCC coho, and is also classified as "essential fish habitat" for coho and chinook salmon under the Magnuson-Stevens Fishery Conservation Act ("MSA"), 16 U.S.C. §§ 1801 *et seq. See* Dkt.

1   No. 33 at 2.  Caltrans describes the PCN-2 work as occurring at a distance of 0 (zero) feet from the
2   river channel (Rev. BA at 55), but also states that no in-stream work will occur (*id*. at *v*).

### II.    Plaintiffs' Lawsuit

Plaintiffs are three environmental organizations and a resident of Del Norte County who uses and enjoys the Smith River for recreational purposes.  On September 23, 2013, Plaintiffs filed a complaint against Caltrans and NMFS, and certain named individuals at these agencies acting in their official capacities, alleging seven causes of action, all under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq*.:  (1) failure to adequately engage in ESA consultation (against NMFS); (2) failure to adequately engage in consultation under § 305 of the MSA (against all defendants); (3) failure to adequately engage in Wild and Scenic Rivers Act consultation (against Caltrans); (4) failure to prepare an environmental impact statement ("EIS") as required by the National Environmental Policy Act ("NEPA") (against Caltrans); (5) failure to prepare an adequate environmental assessment ("EA") as required by NEPA (against Caltrans); (6) failure to comply with the Department of Transportation Act as required by NEPA (against Caltrans); and (7) failure to comply with NEPA, ESA, MSA, the Wild and Scenic Rivers Act, and the Department of Transportation Act (against all defendants).  Dkt. No. 1.

Defendant Caltrans challenged portions of the complaint in a motion to dismiss.  On February 26, 2014, the Court dismissed the second and seventh causes of action against Caltrans under the MSA for lack of subject matter jurisdiction.  Dkt. No. 33.  Plaintiffs filed an amended complaint on April 16, 2014, limiting their MSA claim to only Defendant NMFS, but otherwise keeping intact the allegations in the original complaint.  Dkt. No. 74.

On March 19, 2014, Plaintiffs filed this motion for a preliminary injunction pending a hearing on the merits.  Dkt. No. 48.  Plaintiffs raised a number of grounds for an injunction based on NMFS's alleged failure to comply with the ESA, and Caltrans' alleged failure to comply with the NEPA.  At this stage, the Court does not have the administrative record, which Defendants are expected to provide on May 5, 2014.

1    As detailed below, the Court finds that Plaintiffs are entitled to an injunction on the basis of the ESA claim against NMFS. The Court defers consideration of the NEPA and other claims to the hearing on the merits.

**DISCUSSION**

**I.   Laches**

As an initial matter, Defendants claim Plaintiffs waited too long to seek an injunction and that laches should bar this motion. Plaintiffs filed this action in September 2013, have known since August 2013 that construction was set to begin in May 2014, and were informed by Caltrans in advance of the key dates in the contracting and initial work stages, but did not file this motion until March 19, 2014. In Defendants' view, this amounts to delay that is fatal to the preliminary injunction request.

The Court is unpersuaded by Defendants' laches argument. Laches "is to be invoked sparingly in environmental cases because the plaintiff is not the only party to suffer harm by alleged environmental damage." *Neighbors of Cuddy Mountain v. U.S. Forest Serv.*, 137 F.3d 1372, 1381 (9th Cir. 1998). To establish a laches bar, a party must demonstrate both a "(1) lack of diligence by the party against whom the defense is asserted, *and* (2) prejudice to the party asserting the defense." *Apache Survival Coal. v. U.S.*, 21 F.3d 895, 905 (9th Cir. 1994) (quoting *Lathan v. Brinegar*, 506 F.2d 677, 692) (9th Cir. 1974) (en banc) (emphasis in original, further citations omitted)).

In *Apache*, which Defendants rely on here, plaintiffs were barred by laches because they ignored for several years the environmental review process leading up to commencement of the project, even though they had been invited to participate in the review, and then waited another eight months before seeking an injunction. *See id.* at 907-10. This case lacks such an extended period of neglect by the plaintiffs. Plaintiffs here were active participants in the environmental review process (Dkt. No. 61 at 19 n.9), and have shown reasonable diligence in retaining experts and gathering facts for their case. They have not slept on their rights. Moreover, in *Apache*, there was "no reason to believe that other parties will experience the sort of harm claimed by the San Carlos Apache" because their challenge was based on a religious interest specific to that tribe.

4

1  *Apache*, 21 F.3d at 908. That limiting factor has no application here because the harm to the
2  threatened salmon and their critical habitat that Plaintiffs allege would affect the general public.
3  The Court therefore denies Defendants' laches argument.

## II.       Preliminary Injunction Standard

To obtain a preliminary injunction, Plaintiffs must show that: (1) they are likely to suffer irreparable harm in the absence of a preliminary injunction; (2) they are likely to succeed on the merits; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008). Our circuit also permits the use of the "serious questions" approach. If a plaintiff shows a likelihood of irreparable harm and that the injunction is in the public interest, a preliminary injunction can issue so long as plaintiff demonstrates that there are serious questions going to the merits and the balance of hardships tips sharply in plaintiff's favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

The APA governs this Court's review of Defendants' challenged conduct. Under that statute, well-established standards require the Court to defer to the agency's action so long as it is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013). "A decision is arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Conservation Cong.*, 720 F.3d at 1054 (quoting *Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010)). The reviewing court must be at its "most deferential" when reviewing scientific judgments and technical analyses within the agency's expertise. *Id.*

The Court's deference extends even to less than prime work by an agency so long as its analytical path and reasoning can reasonably be discerned. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, --- F.3d ---, 2014 WL 975130, at *13 (9th Cir. Mar. 13, 2014) (upholding biological opinion where the court could "discern the agency's reasoning," even though the

United States District Court
Northern District of California

document was "a big bit of a mess"); *McFarland v. Kempthorne*, 545 F.3d 1106, 1113 (9th Cir. 2008) ("a court will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned") (citation omitted). But the agency must always "articulate[] a rational connection between the facts found and the conclusions made" (*Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 525 (9th Cir. 2010) (citation omitted)) and provide a "satisfactory explanation" for its actions (*Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1048 (9th Cir. 2012) (citations omitted)). "Without an adequate explanation, we are precluded from undertaking meaningful judicial review." *Id.* at 1049.

Defendants contend that the environmental review process adequately assessed the Project, including the work at the PCN-2 site, and properly determined that it is not likely to have an adverse effect on the threatened SONCC coho salmon or their critical habitat. But the biological assessment documents that Defendants bank on are contradictory and unclear, and Plaintiffs have raised serious questions about their adequacy under the law.

**III.     The ESA**

The statutory context driving this conclusion is the ESA and its consultation requirements. The ESA contains procedural and substantive provisions intended to protect species listed as threatened or endangered under the Act. *See* 16 U.S.C. § 1536; 50 C.F.R. §§ 402 *et seq*. Section 7(a)(2) of the ESA requires federal agencies or their non-federal designees to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species." 16 U.S.C. § 1536(a)(2).

Section 7 of the ESA mandates a consultation process when an agency proposes to do an action that potentially affects listed species and their habitat. *See* 50 C.F.R. §§ 402.10-14. Before initiating any action in an area that hosts a threatened or endangered marine and fish species, the federal agency proposing an action ("action agency") is required to consult with the NMFS to determine the likely effects of the proposed action on the species and critical habitat. *See Conservation Cong.*, 720 F.3d at 1051 n.1. The action agency must prepare a biological assessment to "independently determine whether the action 'may affect' a listed species or its

habitat under the ESA." *Id.*; 50 C.F.R. § 402.14(a). If the action "may affect" a listed species or its habitat, formal consultation with NMFS is generally required. *See Conservation Cong.*, 720 F.3d at 1051 n.1; 50 C.F.R. §§ 402.14(a)-(c).

Under formal consultation, NMFS must prepare a biological opinion that advises the federal agency about whether the proposed action, alone or "taken together with cumulative effects, is likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of critical habitat." *Conservation Cong.*, 720 F.3d at 1051 n.1; 50 C.F.R. § 402.14(g)(4).

An agency can also opt to do an informal consultation. Informal consultation "is an optional process that includes all discussions, correspondence, etc., between [NMFS] and the Federal agency . . . , [and is] designed to assist the Federal agency in determining whether formal consultation or a conference is required." 50 C.F.R. § 402.13. "If during informal consultation it is determined by the Federal agency, with the written concurrence of [NMFS], that the action is not likely to adversely affect listed species or critical habitat, the consultation process is terminated, and no further action is necessary." *Id.* Thus, formal consultation is excused, even if the action "may affect" a listed species or its habitat, so long as (1) the federal agency determines that its action is unlikely to adversely affect the protected species or critical habitat, and (2) NMFS concurs with that determination. *See Natural Res. Defense Council v. Houston*, 146 F.3d 1118, 1126 (9th Cir. 1998); 50 C.F.R. § 402.14(b).

**IV.     The Biological Assessments**

Here, Caltrans stepped into the shoes of the federal action agency pursuant to an agreement with the Federal Highway Administration, and prepared an initial biological assessment ("BA") for the proposed Project. NMFS subsequently issued a letter of concurrence ("LOC"). This initial BA and LOC show indications that Defendants invested effort in preparing those documents, and the Court recognizes that investment. The problem is that the initial BA was followed by (at least) two more BAs that, considered collectively, pose material inconsistencies and fail to reasonably explain what Caltrans' ESA conclusions were such that NMFS could properly concur in them.

7

The document trail that is currently before this Court begins on February 13, 2012, when Caltrans sent its first biological assessment to NMFS. (Pollak Decl., Ex. C.) In the summary of findings at the beginning of the BA, Caltrans stated that, for the whole Project, only the work at the PCN-2 location "will affect" a listed fish species. (Gross Decl., Ex. 2 (BA) at iv.) In the same section, Caltrans also stated that the PCN-2 work "may affect the SONCC coho salmon" and "is likely to adversely affect" its critical habitat. (*Id.*) In the section on conclusions at the end of the BA, Caltrans stated that "since harassment may occur, and this action may have an adverse affect [*sic*] on these fish [the SONCC coho salmon], formal consultation with NMFS under Section 7 of the Endangered Species Act of 1973 (Amended) is required." (BA at 61.) A few pages later, however, Caltrans stated that work at the PCN-2 location "is not likely to adversely affect SONCC coho salmon; but may adversely affect SONCC coho Critical Habitat." (*Id.* at 64.) In summary, the initial BA called for <u>formal</u> consultation with NMFS because of potential impacts on "these fish" but also stated the SONCC coho would not likely be adversely affected. The initial BA repeatedly stated that SONCC coho critical habitat was likely to be adversely affected. (*Id*. at 62-64.)

On February 13, 2012, the same day NMFS received the BA, an NMFS fisheries biologist asked Caltrans to provide more information "regarding effects and habitat." (Pollak Decl., Ex. G.) But at the same time, the biologist advised Caltrans that <u>informal</u> ESA consultation was adequate because NMFS had determined that the Project did not "rise to the level of significance for harassment of the fish." (*Id*.) NMFS' informal consultation recommendation did not mention potential impacts on the SONCC coho critical habitat -- which was Caltrans' consistently stated concern in the initial BA. On February 17, 2012, NMFS advised Caltrans again that "informal consultation is appropriate" and that "Caltrans should initiate the consultation as an informal consultation, resulting in a Letter of Concurrence." (*Id.*, Ex. E.) Caltrans responded on February 21, 2012, stating that "[b]ased on your opinion that the project will result in no decrease in the fitness, health, viability, or reproductive success of listed species inhabiting the area, Caltrans will initiate an informal consultation." (*Id.*)

1   At this point, after Caltrans' submission of the initial BA and NMFS's correspondence
with Caltrans, it is simply not clear what Caltrans' conclusion was with respect to potential
impacts on the coho salmon or its critical habitat, or what the agencies' reasoning was in reaching
whatever conclusions they thought they had agreed on.  It is also unclear why and on what
reasonably explained basis Caltrans' determination of the need for formal consultation was
abandoned.

A second round of documents added further confusion.  On March 29, 2012, Caltrans sent
NMFS a revised BA which sought to clarify what Caltrans described as minor inconsistencies in
the project description.  The letter transmitting the revised BA to NMFS stated that "Caltrans has
determined that the project may affect, but is not likely to adversely affect the federally threatened
Southern Oregon Northern California Coastal coho salmon" and requested that "Caltrans would
like to receive concurrence that the project may affect but is not likely to adversely affect coho
salmon." (*Id.*, Ex. A.)  The transmittal letter said nothing about the potential effects on SONCC
coho critical habitat.

The revised BA itself raised new contradictions.  Caltrans added a paragraph in a section
called "Document Preparation History" stating that with "technical assistance from NMFS staff it
was determined that the proposed work may affect, but was not likely to adversely affect SONCC
coho or coho critical habitat.  Consequently, an <u>informal</u> consultation would be initiated." (Rev.
BA at 34 (emphasis added).)  But the revised BA also stated that "this action may have an adverse
affect [*sic*] on these fish [SONCC coho]" and that "<u>formal</u> consultation with NMFS under Section
7 of the Endangered Species Act of 1973 (Amended) is required."  (*Id.* at 61 (emphasis added).)
The revised BA also repeatedly said that work at the PCN-2 location "may adversely affect" and
"is likely to adversely affect" SONCC coho critical habitat.  (*Id.* at 62-63.)  Thus, in the revised
BA, Caltrans called for informal consultation because of no likely adverse effect on coho or
habitat, but at the same time found that the Project would "likely adversely affect" critical habitat
and that formal consultation with NMFS was required.

Despite this evident confusion, on May 7, 2012, NMFS sent a letter concurring in the
revised BA.  (Pollak Decl., Ex. C.)  The LOC stated that "[t]his letter constitutes completion of

informal consultation" for SONCC coho and SONCC coho critical habitat, and concluded that "[b]ased on a review of the documents provided by Caltrans, NMFS concurs with Caltrans' determination that the Project may affect, but is not likely to adversely affect SONCC coho salmon or their critical habitat." (*Id.* at 9.)

After the LOC, Caltrans prepared a third BA in August 2012 ("BA3"). The existence of the BA3 was not revealed to Plaintiffs until a few days before the motion hearing on April 23, 2014. The Court was not made aware of the existence of the BA3 until the day of the hearing. When pressed to explain why the BA3 was not provided to the Plaintiffs or the Court in a timely fashion, Caltrans was unable to provide an explanation. Given the production failure, the Court offered Plaintiffs an opportunity to supplement their motion briefs, which they declined. The Court has reviewed the BA3 and notes that the same inconsistencies stated in the prior BAs are replicated. *See* Dkt. No. 80.

## V. Serious Questions on the Merits

Plaintiffs have raised a serious question about the adequacy of the ESA review and consultation process in this case. The BAs and the LOC that are before this Court show contradictions and critical gaps in reasoning that give rise to serious questions about whether NMFS has discharged its obligation to rationally identify potential impacts, reasonably explain the basis for its conclusions or concurrence, and evaluate all the relevant factors and evidence.

As the document trail shows, it is not possible to readily determine what Caltrans concluded about the potential effects of the Project and what NMFS evaluated and concurred in. As detailed above, Caltrans was inconsistent in its conclusions about potential effects on "these fish" and critical habitat. It is equally hard to determine whether Caltrans concluded that formal or informal consultation was proper under the ESA. All of the BAs stated that "this action may have an adverse affect [*sic*] on these fish [SONCC coho]" and that "formal consultation with NMFS . . . is required." (*See*, *e.g.*, BA2 at 61.) The revised BA and BA3 also stated that informal consultation was appropriate. (*See*, *e.g.*, BA2 at 34.) Despite these inconsistencies, NMFS purported to "concur" that informal consultation was sufficient. The NMFS concurrence makes little sense in this context.

10

In its opposition brief, NMFS seeks to smooth over the gaps by pointing to two e-mails between NMFS and Caltrans. (Pollak Decl., Exs. E, G.) These e-mails do not do the job. They are short and conclusory, and contain no substance that might help the Court discern the reasoning that supported an informal consultation approach and concurrence. The cited e-mails also precede the revised BA and BA3, both of which stated the opposite conclusion that "formal consultation with NMFS . . . is required."

Although the Court's review is deferential, it cannot rubber-stamp a haphazard consultation process. The agencies must do more than just go through the motions, and they must provide the Court with an "adequate explanation" so that the Court is able to undertake "meaningful judicial review." *Humane Soc'y*, 626 F.3d at 1049. That cannot be done here, at least not on this record at this stage of the proceedings.

This is not a case of excusable minor sloppiness, as Defendants suggest. *Cf.*, *San Luis*, 2014 WL 975130, at *13 (attributing the substantial issues in the biological opinion to the "challenging deadline" set by the district court, where court could nevertheless "discern the agency's reasoning"). And despite Defendants' arguments, *Forest Guardians v. Johanns*, 450 F.3d 455 (9th Cir. 2006) does not dictate a different result. The present record does not permit this Court to conclude that Caltrans properly reached a "finding" during informal consultation that the Project would not, in fact, adversely affect the salmon or their critical habitat. *See id.* at 458.

Consequently, Plaintiffs have raised a serious question about the adequacy of NMFS's environmental assessment of the Project under the ESA -- a question that can be answered only after review of the administrative record and further proceeding on the merits. In light of the Court's findings below regarding the remaining preliminary injunction factors, this serious question supports the issuance of a preliminary injunction. Because there is a serious question regarding Plaintiffs' ESA claim, the Court need not reach Plaintiffs' NEPA claim at this time. *See Alliance*, 632 F.3d at 1139.

### VI. Likely Irreparable Harm

To obtain a preliminary injunction, Plaintiffs must also establish that irreparable harm will likely result, absent the injunction. *Winter*, 129 S.Ct. at 375. A mere "possibility" of irreparable injury is insufficient. *Id.*

Substantial procedural violations of the ESA can themselves justify an injunction. *See*, *e.g.*, *Ctr. for Bio. Diversity v. U.S. Fish and Wildlife Serv.*, No. C-08-1278-EMC, 2011 WL 6813200, at *5 (N.D. Cal. Dec. 28, 2011) (citing cases). "The Ninth Circuit has repeatedly found that the purpose of consultation under the ESA is to prevent future substantive violations of the ESA, such that '[i]rreparable damage is presumed to flow from a failure properly to evaluate the environmental impact of a major federal action.'" *Id*. (quoting *Thomas v. Peterson*, 753 F.2d 754, 764 (9th Cir. 1985)). "It is not the responsibility of the plaintiffs to prove, nor the function of the courts to judge, the effect of a proposed action on an endangered species when proper procedures have not been followed." *Wash. Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1035 (9th Cir. 2005) (quoting *Thomas*, 753 F.2d at 765). Indeed, the very deficiencies in the consultation and review documents which preclude a meaningful judicial review of the agencies' decision not to engage in formal consultation under the EPA also make it challenging, if not impossible, to determine if there is likely to be irreparable harm to the salmon or their habitat if this Project is not enjoined.

Nevertheless, the Court is mindful that while "[t]he Ninth Circuit has declined to adopt a rule that any potential environmental injury automatically merits an injunction" (*Ctr. for Bio. Diversity v. Cal. Dept. of Transp.*, No. C 12-02172 JSW, 2012 WL 5383290, at *8 (N.D. Cal. Nov. 1, 2012) (citation omitted)), it has also held that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable," (*Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1020 (9th Cir. 2009) (citation omitted)).

Here, the Court finds that Plaintiffs have separately made a sufficient showing of likely irreparable harm to support an injunction. Plaintiffs provided a declaration by Dr. C. Frissell, a fisheries scientist and aquatic ecologist. Plaintiffs have offered enough evidence that, even

without the benefit of the administrative record, it appears likely that the Project will increase erosion and short- and long-term delivery of sediments into the Middle Fork Smith River, threatening the SONCC coho and its critical habitat.  (*See* Frissell Decl. at ¶¶ 33, 38-44, 61, 68-70.)[1]  Dr. Frissell provides that long-term increases in sediment delivery are "highly likely to occur" and "highly likely impacts" include reduction of available spawning and rearing habitat, increased egg mortality, reduction in fishes' growth rates, and reduction in fishes' physiological functions, among other things.  (*See id*. at ¶ 61.)  Caltrans indicated that ground-breaking cutslopes will be made during the first phase of construction.  At oral argument, relying on Dr. Frissell's analysis, Plaintiffs asserted that this harm is irreparable because once sedimentation is deposited into the river, that damage cannot be reversed.  Moreover, once the process of slope cutting has begun, the ground cannot be repaired.  Thus, the Court finds that Plaintiffs have made a sufficient showing of likely irreparable harm.

### VII. Balance of Equities

When the plaintiff has raised serious questions going to the merits, the balance of equities must tip *sharply* in the plaintiff's favor.  *Alliance*, 632 F.3d at 1134-35.  As the court stated in *Bair*, to balance the equities, the Court weighs "the environmental risk were the preliminary injunction not granted . . . against the economic loss or other risk were the injunction granted, and the scale must tip sharply on the side of environmental risk."  *Bair*, 2011 WL 2650896, at *8.

---

[1] Caltrans made several evidentiary objections to Dr. Frissell's declaration, chief among which is the argument that the declaration is extra-record evidence that is not reviewable under the APA.  This Court, however, may properly consider the declaration not for the merits of Plaintiffs' claims but for the limited purpose of assessing irreparable harm, to which NMFS has stated no objection.  *See* Dkt. No. 61 at 24-25; *Bair v. Cal. Dept. of Transp.*, No. C10-04360WHA, 2011 WL 2650896, at *3 (N.D. Cal. July 6, 2011).  While Caltrans also makes additional objections such as hearsay, in deciding a preliminary injunction, the district court "may give even inadmissible evidence [including hearsay] some weight, when to do so serves the purpose of preventing irreparable harm before trial."  *Conservation Cong. v. U.S. Forest Serv.*, No. Civ. S–11–2605LKK, 2014 WL 1155579, at *4 (E.D. Cal. Mar. 21, 2014) (deciding a temporary restraining order on "essentially the same [standard] as that for issuing a preliminary injunction") (brackets in original) (quoting *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)); *Wild Equity Inst. v. City and Cnty of San Francisco,* No. C11–00958 SI, 2011 WL 5975029, at *5 n.1 (N.D. Cal. Nov. 29, 2011) (overruling defendants' objections to certain portions of plaintiffs' experts' testimony at the preliminary injunction stage).

Plaintiffs argue that the balance of equities is in their favor because of the likely irreparable harm to the salmon and their critical habitat if the Project proceeds without further evaluation and consultation. Defendants argue the balance is in their favor, because Caltrans may incur potential delay damages if the Project were enjoined. The Court notes, however, that despite having been expressly invited to make a more specific showing of those damages, Caltrans has not done so. *See* Dkt. Nos. 79, 81.

The Court finds that the balance of equities tips sharply in favor of Plaintiffs and protecting the endangered salmon and their critical habitat pending a merits determination. The Court therefore finds that a preliminary injunction should issue, but that the case should proceed on the fast-track schedule the Court has already set, so that it can expedite a final decision on the merits and minimize the potential economic hardship to Caltrans in the interim.[2]

## VIII. Public Interest

The public interest also favors an injunction until the merits of Plaintiffs' claims can be fully decided. The Ninth Circuit has recognized "the public interest in careful consideration of environmental impacts before major federal projects go forward," and has held that "suspending such projects until that consideration occurs comports with the public interest." *Alliance*, 632 F.3d at 1138 (citation omitted). But at the same time, the Court is also required "to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Id.* (citing *Cal. Pharm. Ass'n v. Maxwell–Jolly*, 596 F.3d 1098, 1114-15 (9th Cir. 2010), *overruled on other grounds by Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S.Ct. 1204, 182 L.Ed.2d 101 (2012)).

The Court recognizes that this is a case where the public has an interest on both sides of the scale. However, as Plaintiffs pointed out at the hearing, there are alternate routes that trucks can use in the meantime, and the local residents of Del Norte County are able to use the roads for

---

[2] There is some uncertainty regarding the permissibility of balancing hardships at all in an ESA case following the Supreme Court's decision in *Winter*. *Compare Conservation Cong.*, 720 F.3d at 1054 (including balance of hardships as a preliminary injunction factor), *with Salix v. U.S. Forest Serv.*, 944 F. Supp. 2d 984, 1001 (D. Mont. 2013) (holding that a court cannot balance interests in an ESA preliminary injunction case). For the sake of completeness, the Court has examined the balance issue.

access, problem-free, even without the proposed improvements.  The public interest in ensuring the safety of the endangered salmon and their habitat, as well as the public interest in making sure federal projects are approved and undertaken only after following the proper procedures mandated by the law, supports the issuance of a short reprieve here while the merits can be sorted out.

### IX.     Scope of Injunction

It is "well-settled that a court can enjoin agency action pending completion of section 7(a)(2) requirements."  *Wash. Toxics Coal.*, 413 F.3d at 1034 (citations omitted).  Section 7 further requires that "[a]fter initiation of consultation required under subsection (a)(2) of this section, the Federal agency . . . shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2) of this section."  16 U.S.C. § 1536(d).

Injunctive relief "must be tailored to remedy the specific harm alleged."  *Stormans Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009) (citation omitted).  But an injunction is not overbroad if its scope aims to remedy actual harm.  *Bair*, 2011 WL 2650896, at *8 (citation omitted).

Here, Plaintiffs move to enjoin Caltrans from taking any further work in connection with the Project until Plaintiffs' claims are resolved on the merits.  Our circuit has held that the ESA's procedural requirements must be strictly enforced, "because [the ESA's] procedural requirements are designed to ensure compliance with the substantive provisions."  *Thomas*, 753 F.2d at 764.  For this and the other reasons discussed above, the Court finds it appropriate to enjoin further work on the Project to prevent any further irreversible and irretrievable commitment of resources on the part of Caltrans until Plaintiffs' claims can be resolved on the merits on an expedited basis.  The Court invites Caltrans to propose non-jeopardizing portions of the Project it believes might be able to go forward that are outside the ESA issue discussed in this order.  *See Wash. Toxics Coal.*, 413 F.3d at 1034-35.

15

## X. Bond

Federal Rule of Civil Procedure 65(c) generally requires a movant to deposit a security. Courts, however, have "discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." *Save Strawberry Canyon v. Dep't of Energy*, 613 F. Supp. 2d 1177, 1190-91 (N.D. Cal. 2009) (requiring no bond); *Bair*, 2011 WL 2650896, at *9 (requiring $10,000 bond); *Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325-26 (9th Cir. 1985) (requiring no bond against a non-profit environmental group). Here, Plaintiffs are an individual and three non-profit environmental groups. In order to not deny these Plaintiffs access to judicial review, the Court orders that a bond of $10,000 must be posted within 14 calendar days of the date of this order.

## CONCLUSION

A preliminary injunction is GRANTED. Caltrans is enjoined from taking any further work in connection with the Project until Plaintiffs' claims are resolved on the merits. Based on a discussion about scheduling with the parties at the hearing, the Court has ordered the following expedited schedule on the merits: Plaintiffs shall file their motions for summary judgment by JULY 9, 2014, limited to two briefs -- one against all the state defendants and one against all the federal defendants -- of 30 pages each. Defendants shall file their oppositions to Plaintiffs' motions and their cross-motions for summary judgment, limited to 30 pages for both purposes, by SEPTEMBER 12, 2014. Plaintiffs shall file their oppositions to Defendants' cross-motions and their replies in support of their summary judgment motions, limited to 15 pages against each set of Defendants, by OCTOBER 3, 2014. Defendants shall file their reply briefs in support of their respective cross-motions, limited to 15 pages per set of Defendants, by OCTOBER 24, 2014. The hearing shall be on NOVEMBER 19, 2014, at 9:30 a.m.

**IT IS SO ORDERED.**

Dated: May 2, 2014

_____
JAMES DONATO
United States District Judge